## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| SHUANGXI ZHANG,<br><br>Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,<br><br>Defendants. | Case No. 1:26-cv-20013 |

**PLAINTIFF'S EX PARTE MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................................1

II. PERSONAL JURISDICTION AND VENUE ....................................................................2

III. STATEMENT OF FACTS .................................................................................................3

    A. Plaintiff and the Patent-in-Suit.................................................................................3

    B. Defendants' Unlawful Activities ...............................................................................4

    C. Infringing Products....................................................................................................4

IV. ARGUMENT ......................................................................................................................5

    A. Standard for Temporary Restraining Order..............................................................5

    B. Plaintiff Will Likely Succeed on the Merits.............................................................5

    C. There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Immediate and Irreparable Harm in the Absence of Injunctive Relief .......................................................7

    D. Balance of Hardships Weighs Strongly in Favor of Granting Plaintiff Injunctive Relief............................................................................................................................10

    E. Public Interest Favors Issuance of a TRO ..................................................................10

    F. No Notice Should Be Required.....................................................................................11

V. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE..............................................11

    A. A Temporary Restraining Order Immediately Enjoining Defendants from Further Infringement of Plaintiff's Patent is Appropriate.............................................................12

    B. Preventing the Fraudulent Transfer of Assets is Appropriate.....................................13

    C. Plaintiff is Entitled to Expedited Discovery...............................................................14

VI. A BOND SECURING THE INJUNCTIVE RELIEF ......................................................15

VII. CONCLUSION ................................................................................................................15

Plaintiff Shuangxi Zhang ("Plaintiff") respectfully moves on an ex parte basis for entry of a temporary restraining order, including an order temporarily enjoining the individuals, corporations, limited liability companies, partnerships, and unincorporated associations identified on Schedule A (collectively, "Defendants") from future infringement, taking down Defendants' infringing listings, freezing Defendants' assets, and permitting expedited discovery against Defendants.

In support, Plaintiff respectfully refers the Court to the following Memorandum of Law.

<strong><u>MEMORANDUM OF LAW</u></strong>

## I. INTRODUCTION

Plaintiff Shuangxi Zhang ("Plaintiff") is requesting temporary *ex parte* relief based on an action for design patent infringement against Defendants, the individuals, corporations, limited liability companies, partnerships, and unincorporated associations identified on Schedule A (collectively, "Defendants"). Schedule A is attached hereto as Exhibit 1. Defendants' names identified on Schedule A are their Amazon Seller Aliases. The nature of online platforms like Amazon allow Defendants to conceal their identities and the full scope of their operation, and thus making it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their infringing network.

As alleged in Plaintiff's Complaint, Defendants are offering for sale and selling the same unauthorized and unlicensed product that infringes Plaintiff's patented design (the "Infringing Products") through at least the fully interactive, e-commerce stores operating under the Seller Aliases.

Defendants have targeted sales to Florida residents by setting up and operating e-commerce stores using one or more Seller Aliases through which Florida residents can purchase the Infringing Products. The e-commerce stores operating under the Seller Aliases

1

share unique identifiers establishing a logical relationship between them. Further, Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their operation. Plaintiff is forced to file this action to combat Defendants' infringement of his patented design, as well as to protect unknowing consumers from purchasing Infringing Products over the Internet. Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this Court issue an *ex parte* Temporary Restraining Order.

## II. PERSONAL JURISDICTION AND VENUE

This Court may properly exercise personal jurisdiction over Defendants because Defendants structure their business activities so as to target consumers in the United States, including Florida, through at least the fully interactive e-commerce stores operating under the aliases identified on Schedule A (the "Seller Aliases"). Specifically, Defendants have targeted sales to Florida residents by setting up and operating e-commerce stores that target United States consumers, offer shipping to the United States, including Florida, accept payment in U.S. dollars and, upon information and belief, sell products which infringe Plaintiff's patented design, as described below, (collectively, the "Infringing Products") to residents of Florida. Exhibit 4 attached hereto are Amazon purchase orders of Defendants' Infringing Products, confirming the ability to order and ship the Infringing Products to this Judicial District.

Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including those in Florida, in this Judicial District, through accounts with Internet based e-commerce stores (i.e., the Internet Stores) using the Seller Aliases and Seller IDs identified on Schedule A, as well as any and all, as yet undiscovered accounts with additional Internet based e-commerce stores held by or associated with Defendants, their respective officers, employees, agents, servants,

and all persons in active concert or participation with any of them. The Internet Stores maintained by Defendants permit consumers in the U.S., including Florida (and more particularly, in this Judicial District), to view the Infringing Products, as well as communicate (in some cases) with Defendants regarding their listings for the Infringing Products, and to place orders for, receive invoices for, and purchase Infringing Products for delivery in the U.S., including Florida (and more particularly, in this Judicial District), as a means for establishing regular business with the U.S., including Florida (and more particularly, in this Judicial District). See Exhibit 4. The registered business address of Defendant No. 25 on Amazon is in Florida. See Exhibit 5.

Upon information and belief, Defendants (except Defendant No. 25) are Chinese entities and have no residence in the United States. Therefore, in the alternative, personal jurisdiction is proper under Rule 4(k)(2) because Defendants (except Defendant No. 25) are not subject to jurisdiction in any state's courts of general jurisdiction and exercising jurisdiction is consistent with the United States Constitution and laws.

Venue is proper in this District pursuant to 28 U.S.C.§1391(b)(2). A substantial part of the events giving rise to the claims occurred in this District, including Defendants' sale of the Infringing Products and the resulting harm and injury suffered by Plaintiff. Alternatively, venue is proper in this District pursuant to 28 U.S.C.§1391(c)(3) because Defendants (except Defendant No. 25) are Chinese entities and have no residence in the United States.

**III. STATEMENT OF FACTS**

**A.Plaintiff and the Patent-in-Suit**

Plaintiff Shuangxi Zhang is a Chinese individual, with place of residence in Shaodong, Hunan Province, China. See Decl. of Shuangxi Zhang ¶ 2.

Plaintiff is the lawful owner of all right, title, and interest in U.S. Patent No. D901,581 ("the D'581 Patent" or "Patent-in-Suit"). See Decl. of Shuangxi Zhang ¶ 3. A true

and correct copy of Plaintiff's Patent is attached hereto as Exhibit 2.

Plaintiff is engaged in the manufacture of products that practice the Patent-in-Suit, which are imported into and sold in the U.S., including on Amazon. See Decl. of Shuangxi Zhang ¶ 4.

The Patent-in-Suit was filed with the USPTO on June 16, 2020, and claims priority to the same date. The Patent-in-Suit was issued on November 10, 2020. See Exhibit 2.

### B. Defendants' Unlawful Activities

Recently, Plaintiff has identified many fully interactive e-commerce stores offering Infringing Products on online marketplace platforms like Amazon, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. Defendants are believed to be Chinese persons or entities importing infringing goods into the United States for sale on third party marketplaces. See Decl. of Qianwu Yang ¶ 4.

Plaintiff's well-pleaded allegations regarding registration patterns, similarities among Defendants' e-commerce stores, similarities between the Infringing Products sold by Defendants, and common tactics employed to evade enforcement efforts, establish a logical relationship among the Defendants and demonstrate that Defendants are interrelated.

### C. Infringing Products

Infringing Products sold by Defendants include but are not limited to those identified on Schedule A. See Exhibit 1.

With respect to each Defendant, the products listed under different ASINs are identical products, differing only in color.

Based on the photos displayed on Amazon (see Exhibit 3 and Exhibit 7), the Infringing Products are substantially the same in all respects relating to the Patent-in-Suit.

**IV. ARGUMENT**

**A. Standard for Temporary Restraining Order**

The four factors to be considered in determining whether temporary restraining or preliminary injunctive relief is to be granted are: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005).

**B. Plaintiff Will Likely Succeed on the Merits**

Regarding the first factor, success on the merits means demonstrating that it is likely that the patent is infringed and that the patent will survive any invalidity challenges. *See Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009).

However, issued patents are presumed valid, and that presumption applies at trial as well as before trial. *Id*. at 1376-77. "Thus, if a patentee moves for a preliminary injunction and the alleged infringer does not challenge validity, the very existence of the patent with its concomitant presumption of validity satisfies the patentee's burden of showing a likelihood of success on the validity issue." *Id*. at 1377 (citing *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1365 (Fed. Cir. 2001) and *Canon Comp. Sys., Inc. v. Nu-Kote Int'l, Inc*., 134 F.3d 1085, 1088 (Fed. Cir. 1998)).

To challenge Plaintiff's request for emergency relief, it is Defendant's burden to prove that Plaintiff's patent is invalid. *Oakley, Inc. v. Sunglass Hut International*, 316 F.3d 1331, 1339 (Fed. Cir. 2003) ("in the context of a preliminary injunction ... the burden of proving invalidity is with the party attacking validity"). Under Federal Circuit precedent, Defendant must do more than raise a "substantial question." Defendant must present evidence sufficient to convince the Court that Plaintiff is unlikely to succeed on the merits of its

5

validity claim. *Abbott Laboratories v. Sandoz, Inc.*, 544 F.3d 1341, 1364 (Fed. Cir. 2008) ("the correct standard is not whether a substantial question has been raised, but whether the patentee is likely to succeed on the merits, upon application of the standards of proof that will prevail at trial").

The "ordinary observer" test" is adopted in design patent infringement cases: "[I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871).

"[T]he ordinary observer is deemed to view the differences between the patented design and the accused product in the context of the prior art. When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art. And when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 676 (Fed. Cir. 2008).

35 U.S.C. § 271(a) provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." In this case, Plaintiff is the lawful owner of all right, title and interest in the Patent-in-Suit. Plaintiff by and through counsel, compared the Infringing Products against the Patent-in-Suit, and determined that they infringe. See Decl. of Qianwu Yang ¶ 3.

As shown in the Exemplary Infringement Claim Chart (Exhibit 6) and photos of the Infringing Products (Exhibit 7), Defendants' Infringing Products are the same or at least

6

substantially similar to the Patent-in-Suit. It is clearly visible that the Infringing Products incorporate all the key ornamental features of the Patent-in-Suit. Both the patented design and the Infringing Products share the same overall shape and proportions, including a wide wraparound lens and similarly styled temple arms. The curvature of the lens and the angles at the outer corners are identical, and the temple (side arm) extends from the lens frame at the same position and with the same contour.

Specifically, the patented design includes a raised central portion on the upper edge of the lens and a pronounced, sharp angular point along the lower edge of the lens. The raised central portion of this design is a masterstroke — the defining touch that brings the entire design to life. This unique feature serves as the highlight of the composition, and all the Infringing Products contain this feature. In the eye of an ordinary observer, Plaintiff's patented design and the Infringing Products are substantially the same.

Plaintiff has not licensed or authorized Defendants to make, use, offer to sell, sell or import into the U.S. the Infringing Products. See Decl. of Shuangxi Zhang ¶ 4. Also, Plaintiff has a strong likelihood of success with respect to the validity of the Patent-in-Suit because patents are presumed valid.

Therefore, it is highly likely that the Infringing Products infringe the Patent-in-Suit.

**C. There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Immediate and Irreparable Harm in the Absence of Injunctive Relief**

While the Supreme Court has rejected a presumption of irreparable harm stemming from the right to exclude in patent cases (*see eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006)), that holding does not "swing the pendulum in the opposite direction" and thus "[w]hile a patentee's right to exclude alone cannot justify an injunction, it should not be ignored either." *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011). Several factors have been used to consider when finding irreparable harm in patent

infringement cases, including loss of market share and access to customers, a defendant's inability to satisfy judgment, and direct competition between the patentee and infringer. *Robert Bosch LLC v. Pylon Mfg. Co.*, 659 F.3d 1142, 1150 (Fed. Cir. 2011).

Firstly, Plaintiff will suffer immediate and irreparable harm by losing patent exclusivity. A patentee's right to exclude should not be ignored. *Id.* at 1147.

Secondly, Plaintiff will lose market share if Defendants are not enjoined from continuing their infringing activities. Plaintiff's products are also sold on Amazon. See Decl. of Shuangxi Zhang ¶ 4. Due to Defendants' outsized presence on Amazon, Plaintiff is unable to acquire significant market share, even though Plaintiff created and owns the Patent-in-Suit. Each sale of an Infringing Product by Defendants directly deprives Plaintiff of a corresponding sale. Beyond the immediate loss, the absence of that initial transaction eliminates the opportunity for subsequent purchases, such as replacements due to damage or loss of the original products. Furthermore, sales on online marketplaces are heavily driven by customer reviews, influencer recommendations, and word-of-mouth exposure. Accordingly, every legitimate sale of Plaintiff's Products not only generates revenue but also enhances market visibility, fostering a cycle of growth through new customer acquisition. Defendants' infringing sales therefore cause ongoing and compounding harm by diminishing Plaintiff's potential customer base and eroding Plaintiff's market share.

Thirdly, Defendants (except Defendant No. 25) are individuals and businesses who, upon information and belief, reside in the People's Republic of China with no U.S. presence. See Decl. of Qianwu Yang ¶ 4. Courts have found that money damages were insufficient in similar cases involving foreign infringers. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) (reversing denial of permanent injunction where the likely availability of monetary damages was in question, citing *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-cv-0032, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007)

where "'all three defendants are foreign corporations and that there is little assurance that [plaintiff] could collect monetary damages'"). Moreover, Chinese e-commerce store operators like Defendants frequently register Amazon seller accounts through shell companies or through individuals in remote rural areas who have no genuine relationship with the stores' actual controllers. Thus, it is difficult to collect monetary damages from them. See Decl. of Qianwu Yang ¶ 7.

Fourth, the harm that Plaintiff will suffer is immediate if temporary injunctive relief is not granted. Based on the photos displayed on Amazon (see Exhibit 3 and Exhibit 7), the Infringing Products are substantially the same in all respects relating to the Patent-in-Suit. See Decl. of Qianwu Yang ¶ 3. Furthermore, as discussed above, Plaintiff has little assurance that it will be able to collect monetary damages from Defendants. The necessity of a TRO is urgent because, if it is not granted, Defendants are likely to transfer or dissipate their illegal gains and assets, and close their current storefronts and reopen with new aliases, leaving Plaintiff without adequate recourse.

Fifthly, as can be seen in Exhibit 7, the Infringing Products are substantially the same in all respects relating to the Patent-in-Suit, with color and size being the only difference. Therefore, upon information and belief, Defendants are interrelated, including that the Infringing Products were manufactured by and come from a common source. Defendants have already demonstrated the ability to operate multiple Amazon storefronts simultaneously. Without a TRO, nothing prevents them from creating additional accounts at any time, resuming infringing sales, and frustrating judicial relief. Plaintiff's irreparable harm is further supported by the ease with which Defendants can reoffend. This risk of recurrence makes clear that a TRO enjoining not only the named Defendants but also all related parties under their control, together with an asset restraint, is both necessary and appropriate.

Therefore, Plaintiff will suffer immediate and irreparable harm in the absence of a

temporary injunctive relief.

**D. Balance of Hardships Weighs Strongly in Favor of Granting Plaintiff Injunctive Relief**

As willful infringers, Defendants should merit minimal equitable consideration. Being ordered to stop infringing patents they have no right to practice in the first place poses no cognizable hardship on Defendants. See *Daka Rsch., Inc. v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 22-CV-60246, 2023 WL 5310240, at *4 (S.D. Fla. July 14, 2023). Any potential hardship they may claim from the issuance of a temporary restraining order is of their own making. By knowingly engaging in design patent infringement, Defendants assumed the foreseeable risks and consequences of their unlawful conduct. Under such circumstances, courts refused arguments that Defendants would have to shut down operations upon an injunctive relief. *See Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 931 (Fed. Cir. 2012) ("the preliminary record suggests that LTC's losses were the result of its own calculated risk in selling a product with knowledge of Celsis' patent"). Therefore, balance of hardships weighs strongly in favor of issuing a TRO.

**E. Public Interest Favors Issuance of a TRO**

The starting point for analysis of the public interest is favoring protection of a patentee because of the "strong public policy favoring the enforcement of patent rights." *PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1567 (Fed. Cir. 1996). Thus, the inquiry should be "whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1458 (Fed. Cir. 1998). Here, there is no public interest, let alone a critical one, that will be injured by the grant of the requested relief.

The public is currently being misled into believing that Plaintiff has granted a license or permission to Defendants with respect to the Patent-in-Suit. The injunctive relief sought by

1

Plaintiff is designed to eliminate the confusion created through Defendants' conduct. Therefore, public interest favors issuance of a TRO.

### F. No Notice Should Be Required

Under Fed. R. Civ. P. 65(b), "The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

As discussed above, Plaintiff has shown that immediate and irreparable harm will occur if relief is delayed. Furthermore, Defendants' Internet-based operations in a global marketplace allow them to rapidly disseminate Infringing Products, conceal their identities and locations, and swiftly destroy or obfuscate any electronic evidence. Plaintiff is presently unaware of Defendants' true identities, physical locations, or the full network of Internet Stores used to distribute the Infringing Products—notice is therefore presently impossible. There is also a very real risk that adversarial notice would trigger asset flight, evidentiary spoliation, and continued unlawful sales (under a new, different online storefront). These circumstances mirror those in which courts have deemed ex parte relief necessary to prevent further harm and to preserve the court's ability to afford effective final relief. *See Dell Inc. v. BelgiumDomains, LLC*, No. CIV. 07-22674, 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007).

### V. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

35 U.S.C. § 283 authorizes courts to issue injunctive relief "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C),

1

this Court has the power to bind any third-parties, including financial institutions, who are in active concert with Defendants or who aid and abet Defendants and are given actual notice of the order. Therefore, in addition to a temporary restraining order against Defendants, Plaintiff further seeks (1) a temporary asset restraint; and (2) expedited discovery.

**A. A Temporary Restraining Order Immediately Enjoining Defendants from Further Infringement of Plaintiff's Patent is Appropriate**

Plaintiff requests a temporary injunction requiring Defendants to immediately cease all making, using, importing, selling, and/or offering to sell Infringing Products on or in connection with all e-commerce stores operating under the Seller Aliases. Plaintiff also requests that this Court issue an ex parte temporary restraining order directing online marketplaces to disable Defendants' listings and services (including all accounts and ASIN-linked "parent" and "child" listings) related to the Infringing Products to ensure immediate cessation of infringing activity and prevent further irreparable harm pending further proceedings.

Such relief is necessary to stop the ongoing harm to the Plaintiff, including loss of market share and erosion of Plaintiff's patent rights, and to prevent the Defendants from continuing to benefit from infringing upon Plaintiff's Patent. The need for ex parte relief is magnified in today's global economy where infringers can operate anonymously over the Internet. Plaintiff is currently unaware of both the true identities and locations of the Defendants, as well as other e-commerce stores used to distribute, sell, and offer to sell Infringing Products.

Many courts have authorized immediate injunctive relief in similar cases. *See*, e.g., *Dell Inc. v. BelgiumDomains, LLC*, No. CIV. 07-22674, 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007) (finding ex parte relief more compelling where Defendants' scheme "is in electronic form and subject to quick, easy, untraceable destruction by Defendants");

1

*SharkNinja Operating LLC et al v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A*, No. 25-cv-25323 (S.D. Fla. Nov. 21, 2025); *Jun Lu v. Device X*, No. 23-cv-04282 (N.D. Ill. July 10, 2023); *Huang v. MyfatBOSS*, No. 24-cv-01562 (N.D. Ill. March 28, 2024); *Dyson Technology Ltd. v. The Partnerships and Unincorporated Associations Identified on Schedule A*, No. 24-cv-06170 (N.D. Ill. August 5, 2024).

### B. Preventing the Fraudulent Transfer of Assets is Appropriate

Plaintiff requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from Infringing Products sales is not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in offshore accounts, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless. See Decl. of Qianwu Yang ¶ 6.

E-commerce store operators like Defendants regularly open new storefronts and register or acquire new seller aliases for the purpose of offering for sale and selling Infringing Products. Such seller behavioral patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their operation, and to avoid being shut down. See Decl. of Qianwu Yang ¶ 7.

Courts have granted asset restraint in similar cases in this Judicial District. *See*, e.g., *Max's Creations Inc. v. Individuals et al.*, No. 23-20341-CIV, 2023 WL 2388614, at *4 (S.D. Fla. Feb. 8, 2023) (ordering restraint of assets where plaintiff sought equitable relief and reasonable royalty for patent infringement); *Lead Creation Inc. v. Partnerships et al.*, 2023

WL 1993971, at *5 (S.D. Fla. Feb. 14, 2023) (ordering asset restraint where plaintiff sought equitable relief for patent infringement); *Shefit Operating Co., LLC v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule "A"*, No. 0:24-CV-61310, 2024 WL 4880617, at *2 (S.D. Fla. Nov. 25, 2024) (same).

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of its design patent infringement claim, so according to 35 U.S.C. § 289, Plaintiff is entitled to recover "the extent of [Defendants'] total profit." Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts. Plaintiff has shown a likelihood of success on the merits, immediate and irreparable harm suffered as a result of Defendants' activities and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, an asset restraint is proper.

### C. Plaintiff is Entitled to Expedited Discovery

"[F]ederal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729 (11th Cir. 1982). Furthermore, courts have broad power over discovery and may permit discovery to aid in the identification of unknown defendants. See Fed. R. Civ. P. 26(b)(2).

Plaintiff requests expedited discovery to identify names and financial accounts Defendants use for their operations. The expedited discovery requested is limited to what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. Plaintiff's

asset restraint may have little meaningful effect without corresponding expedited discovery. Third parties can comply with these expedited discovery requests without undue burden.

## VI. A BOND SECURING THE INJUNCTIVE RELIEF

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of Plaintiff's evidence supporting its patent infringement claim, to the extent the Court deems it necessary, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than five thousand U.S. dollars ($5,000.00), subject to increase at the Court's discretion. *See, e.g., SharkNinja Operating LLC et al v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A*, No. 25-cv-25323 (S.D. Fla. Nov. 21, 2025) ($5,000 bond).

## VII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court enter a Temporary Restraining Order in the form submitted herewith.

Respectfully submitted,

DATED: January 13, 2026

By: */s/ Valerie Raphael*
Valerie Raphael, Esq.
Florida Bar Number: 1003514
E-mail: valerie@kemetlawgroup.com
KEMET LAW GROUP, LLC
1825 NW Corporate Blvd., Ste. 110 Boca Raton,
Florida 33431 Telephone: (561) 870-0605
Facsimile: (561) 870-0606

*/s/ Ni Xue*
Ni Xue, Esq.
Florida Bar Number: 1026130
E-mail: ni@kemetlawgroup.com
KEMET LAW GROUP, LLC
1825 NW Corporate Blvd., Ste. 110 Boca Raton,

1

Florida 33431 Telephone: (561) 870-0605
Facsimile: (561) 870-0606

Aoyu Yang (pro hac vice forthcoming)
eyeglasses@shm.law
**SHM LAW FIRM**
3000 El Camino Real
Building 4, Suite 200
Palo Alto, CA 94306
Telephone: (650) 613-9737
Telephone: +8613925212009


*Attorneys for Plaintiff*
Shuangxi Zhang

1