IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No. 26-cv-20013-BLOOM/Elfenbein

SHUANGXI ZHANG,

Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE A,

Defendants.

_____/

**DEFENDANTS' AMENDED RESPONSE IN OPPOSITION
TO MOTION FOR PRELIMINARY INJUNCTION**

Defendants IKTOD (Doe 33, Seller ID A28GB8Z1JXEYWK), tumwick (Doe 35, Seller ID A25EIACCO8MZGJ), TTOAOKE-US (Doe 37, Seller ID A30DQ80LLVB2VR) and FAGUMA (Doe 38, Seller ID A2KPJKPXG4K9QF SEKKAF) (collectively "Moving Defendants"), by and through undersigned counsel, hereby amend the Response in Opposition [DE 115] respond to the Motion for Preliminary Injunction [DE 107] ("Motion"). In support thereof, Moving Defendants state as follows:

**I. INTRODUCTION**

On or about January 2026, the Court entered an ex parte Temporary Restraining Order

(TRO) restraining Moving Defendant and others from various acts relating to the alleged infringement of U.S. Design Patent No. D901,581 (the "'581 Patent"), which claims the ornamental design for "eyeglasses." The TRO was granted without notice and without the benefit of adversarial briefing or argument.

On Mar. 16, 2026, Plaintiff file a Motion for Preliminary Injunction [DE 107].

Good cause exists to deny Plaintiff's Motion. The '581 Patent is likely invalid under 35 U.S.C. § 102 (anticipation) and/or § 103 (obviousness) in light of multiple pre-filing prior art references, including the CATEYE sunglasses disclosed publicly before the June 16, 2020 filing date. The functional aspects of the design are not protectable under design patent law, and the overall ornamental appearance of Moving Defendant's accused product is substantially different from the claimed design of the '581 Patent. Plaintiff has not demonstrated a substantial likelihood of success on the merits — the threshold requirement for injunctive relief — and the balance of equities and public interest weigh in favor of dissolution.

Furthermore, a federal court in the Northern District of Illinois (ILND Case No. 25-cv-10942) denied a substantially identical *ex parte* TRO motion by Plaintiff on the same '581 Patent, expressly citing the "likely narrow reading of the scope of the patent in light of the claimed prior art." *See* Illinois Northern District Court (ILND) Dkt. 33 (Minute Entry, Oct. 24, 2025). The docket record is attached here as Exhibit A. Plaintiff's filing in this Court appears to be improper forum shopping after failing in Illinois, without disclosing the prior denial or addressing the prior art concerns raised there. This alone warrants dissolution.

## II. LEGAL STANDARD

The four factors to be considered in determining whether preliminary injunctive relief is to be granted are: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). In design patent cases, a patentee must demonstrate that an ordinary observer, familiar with the prior art, would be deceived into believing the accused product is the same as the patented design. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008). If the design is anticipated, obvious, or primarily functional, no such deception can occur.

## III. THE '581 PATENT IS LIKELY INVALID

### A. Anticipation under 35 U.S.C. § 102

Under the America Invents Act, a patent may not be obtained if, before the patent's effective filing date, "the claimed invention was patented, described in a printed publication, in public use, on sale, or otherwise available to the public." 35 U.S.C. § 102(a)(1). A patent is also barred if "the claimed invention was described in a patent or published patent application" naming another inventor whose application was effectively filed before the patent's effective filing date. § 102(a)(2). There are limited exceptions for certain disclosures by the inventor or derived from the inventor, but only within one year before the effective filing date. § 102(b)(1)–(2). Materials posted on publicly accessible websites qualify under § 102(a)(1) as "printed publications" or as "otherwise available to the public," provided they were publicly accessible

before the critical date. See, e.g., *GoPro, Inc. v. Contour IP Holding LLC*, 908 F.3d 690, 693-95 (Fed. Cir. 2018) (public accessibility controls).

The '581 Patent, filed June 16, 2020, claims the ornamental design for eyeglasses. Multiple single prior art references disclose substantially the same overall visual impression before the filing date:

**1. CATEYE cycling sunglasses (pre-June 2020 publications):**

YouTube video and product images published no later than May 16, 2020 and June 4, 2020 show shield-style, rimless wraparound cycling glasses with a single large lens, angular frame segments, and similar temple/arm configuration.

CATEYE publicly displayed the same overall design before that date. Specifically: June 4, 2020 CATEYE post. A CatEye brand video post dated June 4, 2020 publicly shows the eyewear with the distinctive elongated through-slot in the rear of the temple, the semi-frameless wraparound single lens, and the integrated center-mounted nose assembly. (Figs. 1 and 2). *See* "CATEYE猫眼凯得爱侬专卖店" Douyin, available at https://www.douyin.com/user/MS4wLjABAAAAxervBNr gIG1J9tXaK-_3QeXzOPAlZbLMudEj53n6Mo8?from_tab_name=main&modal_id=6834355118142459147, last visited on Jan. 24, 2026.



**Fig. 1 Screenshot of video of CATEYE brand glasses dated Jan. 24, 2026**



**Fig. 2 Another screenshot from the same video of the CATEYE brand glasses dated Jan. 24, 2026**

A separate CATEYE video posted May 15, 2020 likewise depicts the same model

with the elongated through-slot and wraparound single lens (see Fig. 3). *See* "My New Cycling Glasses! | CATEYE A.R. Photochromic Eyewear II," YouTube (May 15, 2020), https://www.youtube.com/watch?v=0HeeWME12aA, last visited on Jan. 24, 2026.



**Fig. 3 Screenshot of video of CATEYE brand glasses dated May 15, 2020**



| `581 Patent | Prior Art |
|---|---|

**Figure 4: Comparison of D`581 Patent and PriorArt**

As seen from Figure 4 above, the designs of `581 Patent is almost identical to the prior art with the semi-frameless wraparound shield lens, the central V-cut with an integrated nosepiece, and the temple composition of wording of "CATEYE," four-sided hollow decoration, an elongated hollow portion at the end of temple.

The '581 Patent prosecution history confirms that the "CATEYE" logo shown on the right temple appears in solid line and is part of the claimed design. The Examiner required "correction for consistency" because the words "CAT EYE" appeared in Fig. 2 and as a mirror image in Fig. 6, and the Examiner canceled the applicant's boilerplate statement about broken lines because "there are no broken lines in the drawing disclosure." Those actions leave no doubt that the wording is claimed ornamentation. In light of the close prior art, the absence of the claimed brand word mark and other proportion/massing cues "are likely to be important to the eye of the hypothetical ordinary observer," precluding the "same overall visual impression. *See* Exhibit B for USPTO's Notice of Allowance dated Sep. 21, 2020.

## 2. Other pre-2020 references

Similar shield-style sports eyewear designs were publicly disclosed and sold in the cycling and outdoor markets well before June 2020. These references anticipate the '581 Patent under § 102.

### i. Julbo Aerospeed (June 21, 2018) shows similar arms

In 2018, Julbo's Aerospeed showed the temple architecture relevant here: dual elongated slot cutouts on each arm with a shorter window near the hinge side of the arm and a longer slot extending rearward toward the ear, together with a rectilinear hinge block. The Velo review dated June 21, 2018 includes multiple photos in which both the short forward slot and the longer rear slot are visible along the same temple. See the images on pp. 3–4 of the review. Dan Cavallari,

Julbo Aerospeed Sunglasses, Velo (June 21, 2018).[1]



**Fig. 5 Screenshot of review of Julbo Aerospeed sunglasses dated June 21, 2018.**

Comparing those images to the '581 Patent with Figs. 5, above, it can be seen from an ordinary observer's eyes that Aerospeed discloses the very features that set the claimed design's overall impression: a minimalist shield with a sharp V-notch at the nose and temples dominated by a long slot and a squared-off hinge block.

**ii. Sweet Protection Ronin (March/April 2020) teaches the same front shield with minor stylistic variations.**

By March 2020, Sweet Protection's Ronin publicly disclosed a wrap-around shield front featuring (i) a pronounced central V-notch at the nose; and (ii) a frameless look at the top and bottom of the single lens. The product images show this "front" profile clearly —including the sharp V-nose and squared hinge mass. *See* Sweet Protection, "Sweet Protection Announces New Trailblazer MIPS Helmet & Ronin Sunglasses,"

---

[1] The product date of publication as "June 21, 2018 02:20PM." *See* the link https:// velo.outsideonline.com/ road/road-racing/julbo-aerospeed-sunglasses/, under the product image, last visited on Mar. 20, 2026.

Pinkbike (Mar. 19, 2020), available at https://www.pinkbike.com/news/sweet-protection-announces-new-trailblaer-mips-helmet-and-ronin-sunglasses.html, last visited on Mar. 20, 2026.



**Fig. 6. Screenshot from press release ("Sweet Protection Announces New Trailblazer MIPS Helmet & Ronin Sunglasses") dated March 19, 2020.**

## B. Obviousness Under 35 U.S.C. § 103

Even if no single reference anticipates the entire design, the claimed design is obvious in view of the prior arts.

In *LKQ CORPORATION v. GM Global Technology Operations*, the court analogized the design patent for lack of novelty by combining prior arts into an alleged "new design," by citing the Supreme Court's case ruled in 1893 regarding a design of saddle. The court stated:

> The Supreme Court has also addressed the validity of design patent claims in view of combined prior art designs. Most notably, in *Smith v. Whitman Saddle Co.,* the Supreme Court considered whether a design patent claim directed to an ornamental design for a saddle was patentable in view of the combination of two prior art saddles, known as the Granger tree and the Jenifer or Jenifer-McClellan tree. 148 U.S. 674, 680, 13 S.Ct. 768, 37 L.Ed. 606 (1893)

Page 10 of 18

*See LKQ CORPORATION v. GM Global Technology Operations*, 102 F. 4th 1280, 1292 (Fed.

Cir. 2024), where the court quoted Supreme Court's analysis in Smith:

> In other words, the front half of the Granger and the rear half of the Jenifer, or
> Jenifer-McClellan, make up the saddle in question, though it differs also from the
> Granger saddle in that it has a nearly perpendicular drop of some inches at the rear of
> the pommel [upper front part], that is, distinctly more of a drop than the Granger
> saddle had.

*Id.,* quoting 148 U.S. 674, 680, 13 S.Ct. 768, 37 L.Ed. 606 (1893).



**Figure 7: Explanation of Combination of Prior Art**

Even without considering CATEYE product as prior art, Plaintiff's design patent failed.

Similar to what happened in *Smith*, where the design combined the front part of a saddle design

and a rear part of design from another saddle, here, Here, Plaintiff conveniently combined the

frame of Sweet Protection and temple of Julbo Aerospeed sunglasses, and claimed it as it new

design patent. *See* below Figure 7. Plaintiff's such new design failed under 35 U.S.C. § 103.

**C. Functional Aspects Are Not Protectable**

Design patents protect only ornamental features — not functional ones. *Egyptian Goddess*, 543 F.3d at 680. The '581 Patent includes functional elements (e.g., wraparound lens for peripheral vision, aerodynamic frame for sports use, temple curvature for fit), which are not entitled to protection. Once functional aspects are discounted, the remaining ornamental differences between the accused product and prior art are even more apparent.

**D. This Court Has Independent Jurisdiction to Invalidate a Design Patent.**

In *Egyptian Goddess, Inc. v. Swisa, Inc*., 543 F.3d 665 (Fed. Cir. 2008), the court said a district court has independent jurisdiction to invalidate a design patent.

### IV. NO SUBSTANTIAL LIKELIHOOD OF SUCCESS ON INFRINGEMENT

Even assuming validity, Plaintiff cannot show that an ordinary observer, familiar with the prior art, would be deceived into believing Moving Defendant's product is the same as the patented design. The accused eyewear has distinct ornamental differences as mentioned above. *See* below Figure 8: Comparison of Moving Defendants' Products with `581 Patent.



**Figure 8: Comparison of Defendants' Product with `581 Patent.**

Defendants' design have no word "CATEYE" on, and ostensible difference in design at the temple. As also seen from Figure 9 below, the three of Moving Defendants have different front view designs. See Figure 9 below.



**Figure 9: Front View Comparison**

## V. PRIOR DENIAL IN ILND CASE IS PERSUASIVE AUTHORITY AGAINST TRO

A court in the Northern District of Illinois denied a substantially identical motions by Plaintiff on the same '581 Patent, stating that Plaintiff had not shown likelihood of success given the "likely narrow reading of the scope of the patent in light of the claimed prior art." *See* Ex. A, docket record of ILND Case No. 25-cv-10942, Dkt. 33 (Minute Entry, Oct. 24, 2025). The ILND opposition (Dkt. 20) raised the same prior art issues, including the CATEYE reference, which was not mentioned in Plaintiff's initial filings there — a point Plaintiff still fails to address here.

While issue preclusion (collateral estoppel) does not strictly apply as TRO denials are not

final judgments on the merits, the ILND decision is highly persuasive. Plaintiff's filing in this Court, without disclosing the prior denial, appears to be improper forum shopping after losing in Illinois. This undermines Plaintiff's credibility and weighs against maintaining the TRO.

## VI. PLAINTIFF'S FAILURE TO DISCLOSE OWN SALES TO USPTO AND THIS COURT

Plaintiff's self-serving declaration in the proceeding of ILND case, claiming CATEYE purchased from Plaintiff is uncorroborated and contradicts its own failure to disclose any pre-filing sales to the USPTO. If CATEYE's product was Plaintiff's own design on sale before June 16, 2020, Plaintiff was required to disclose this to the USPTO under the 1-year grace period (35 U.S.C. § 102(b)(1)). No such disclosure appears in the '581 prosecution history. This omission could constitute inequitable conduct, rendering the patent unenforceable. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011).

## VII. BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR DISSOLUTION

The TRO restrains Moving Defendant's lawful business operations without notice or opportunity to be heard. Continued enforcement risks irreparable harm to Moving Defendant  (lost sales, frozen accounts) while Plaintiff has adequate remedies at law (damages).

Thus, the public interest favors competition and access to unpatented or invalidly  patented designs.

## VIII. NO PERSONAL JURISDICTION

A plaintiff bears the burden of establishing personal jurisdiction by a preponderance of the evidence. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).

Page 15 of 18

Complaints must include "properly pleaded facts pertinent to the conduct and activities of the defendant in the forum state[.]" *Borislow v. Canaccord Genuity Grp. Inc.*, No. 14-cv-80134, 2014 WL 12580259, at \*4 (S.D. Fla. June 27, 2014) (citing Elmex Corp. v. Atl. Fed. Sav. & Loan Ass'n of Ft. Lauderdale, 325 So. 2d 58, 61 (Fla. 4th DCA 1976)) (internal quotation marks omitted). When a defendant submits evidence in support of its challenge to personal jurisdiction, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *United Techs. Corp.*, 556 F.3d at 1274 (quoting *Meier ex rel. Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002) (internal quotation marks omitted)). "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff," *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (citation omitted), and must "accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits," *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

"Under the committing a tortious act prong, a court may assert jurisdiction over a nonresident defendant who commits a tort outside of the state that causes injury inside the state, meaning the defendant's physical presence is not required if the tort causes an injury in Florida." *Sutherland v. SATO Glob. Sols., Inc.*, No. 17-cv-61596, 2018 WL 3109627, at \*5 (S.D. Fla. Apr. 10, 2018) (alteration adopted; quotation marks and citation omitted).

"[T]he websites' accessibility alone is insufficient to demonstrate Plaintiff sustained an injury in Florida and Plaintiff has provided no authority to the contrary." *Li*

*v. Schedule A Defs.*, 0:23-cv-62295 (S.D. Fla. Oc. 24, 2025). "[A]s *Mosseri* instructs, in order to satisfy Florida's long-arm statute, an injury must arise from these infringing activities." *Michael Grecco Prods., Inc. v. Imageselect B.V.*, No. 21-21999-CIV, 2022 WL 18779105, at *6 (S.D. Fla. Sept. 27, 2022)("A website's accessibility in Florida does not conclusively satisfy Florida's long-arm statute….").

Plaintiff has to show *prima facie* evidence at the beginning to establish personal jurisdiction. However, according to Plaintiff, his or her counsel "attempted to place purchase orders on Amazon for the newly added infringing products identified on Schedule A" only (see Yang Decl., ECF No. 107-1, p. 3, ¶ 3). However, no actual order was placed. Thus, no injury arose from their attempted purchase order.

In Plaintiff's Amended Complaint [DE 24], he or she claimed the following to establish personal jurisdiction, which is insufficient:

> The Internet Stores maintained by Defendants permit consumers in the U.S., including Florida (and more particularly, in this Judicial District), to view the Infringing Products, as well as communicate (in some cases) with Defendants regarding their listings for the Infringing Products, and to place orders for, receive invoices for, and purchase Infringing Products for delivery in the U.S., including Florida (and more particularly, in this Judicial District), as a means for establishing regular business with the U.S., including Florida (and more particularly, in this Judicial District).

*See* Am. Compl., ECF No. 24, p. 3, ¶ 3.

Merely operating an interactive website does not establish personal jurisdiction in Florida. Mere permission consumers to place orders to Florida residents is insufficient.

## VIII. REQUEST FOR RELIEF

For the foregoing reasons, Moving Defendant respectfully requests that the Court deny the Motion for Preliminary Injunction [DE 107] as to Moving Defendants and grant such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Jianyin Liu
Jianyin Liu
Florida Bar No. 1007675
Law Offices of James Liu PLLC
30 N. LaSalle St., Ste. 1510
Chicago, IL 60602
Telephone: (305) 209-6188
Email: jianyin@jamestliulaw.com
Counsel for Moving Defendants

Date: March 22, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2026, a true and correct copy of the foregoing was served via CM/ECF on all counsel of record.

/s/ Jianyin Liu